# IN THE COURT OF APPEALS OF IOWA

No. 20-0166
Filed February 3, 2021

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**AUSTIN MICHAEL BRUCKNER,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Clinton County, Tamra J. Roberts, Judge, (sentencing) and Phillip J. Tabor, District Associate Judge, (trial).

Austin Bruckner appeals his conviction for serious-misdemeanor eluding, claiming there was insufficient evidence to convict. **AFFIRMED AND REMANDED FOR ENTRY OF NUNC PRO TUNC ORDER.**

Zeke R. McCartney of Reynolds & Kenline, L.L.P., Dubuque, for appellant.

Thomas J. Miller, Attorney General, and Thomas J. Ogden, Assistant Attorney General, for appellee.

Considered by Bower, C.J., and Vaitheswaran and Greer, JJ. Tabor, J., takes no part.

**GREER, Judge.**

Austin Bruckner appeals his conviction for eluding, in violation of Iowa Code section 321.279(1) (2019). Bruckner was charged with driving while barred (count I) and eluding under section 321.279(2) (count II).[1] He took the case to a jury trial, and the jury acquitted Bruckner of driving while barred. As for count II, the jury found Bruckner guilty of the lesser included offense of eluding under 321.279(1).[2]

On appeal, Bruckner asserts the jury lacked substantial evidence to convict him of eluding because the State failed to prove he "willfully" eluded under section 321.279(1). Alternatively, he argues that if we find substantial evidence supports the conviction, Bruckner challenges a defect in the sentencing order. Both parties agree the sentencing order incorrectly stated Bruckner was convicted of aggravated-misdemeanor eluding under section 321.279(2) rather than serious-misdemeanor eluding under section 321.279(1). Bruckner asks his conviction be reversed and remanded for sentencing, while the State asserts an order nunc pro tunc is the appropriate remedy.

---

[1] Iowa Code section 321.279(2) states:
> The driver of a motor vehicle commits an aggravated misdemeanor if the driver willfully fails to bring the motor vehicle to a stop or otherwise eludes or attempts to elude a marked official law enforcement vehicle . . . driven by a uniformed peace officer after being given a visual and audible signal . . . and in doing so exceeds the speed limit by twenty-five miles per hour or more.

[2] Iowa Code section 321.279(1) is a serious misdemeanor offense for eluding and is a lesser included offense of 321.279(2). Unlike section 321.279(2), section 321.279(1) does not contain an element that the driver exceeded the speed limit while willfully failing to stop or eluding.

**Factual Background and Proceedings.**

Deputy Clayton Rabe of the Clinton County Sheriff's Department was driving westbound in a marked patrol car on the four-lane portion of Highway 30 when he spotted a bright orange vehicle heading eastbound at a high rate of speed. Deputy Rabe activated the patrol car's radar and clocked the vehicle at eighty-seven miles per hour (mph) in a sixty-five mph zone. As Deputy Rabe turned his vehicle to pursue, he again activated the radar and clocked the same vehicle at an increased speed of 111 mph. Deputy Rabe later explained:

> I start heading eastbound. I was picking up speed, and I could just barely see this orange vehicle. At the time I thought it was . . . an orange MINI Cooper style vehicle.[3] But it had its top down—had the convertible top down . . . it was so fast when it went past me. So I'm headed eastbound and the vehicle makes a very sharp left-hand turn to head north on South 54th Street which is gravel.

Now with his patrol lights on, Deputy Rabe followed the vehicle onto the gravel road, driving at speeds between fifty-five and sixty-five mph. By the time he turned onto the gravel road, Deputy Rabe estimated the vehicle was "probably an eighth to a quarter mile" ahead moving fast. Deputy Rabe activated his patrol car's siren but was losing ground and could only see the dust trail left by the vehicle. After a minute or so into the chase, Deputy Rabe saw the vehicle turn right and head eastbound. The vehicle was now "a quarter to a half" mile ahead of the squad car.

After losing sight of the vehicle, Deputy Rabe continued to travel in what he believed was the general direction of the vehicle when he received a call from the dispatch center reporting that a vehicle had crashed. When he arrived on the crash scene, he encountered the driver—Bruckner—and a female passenger sitting on

---

[3] Bruckner drove an orange Volkswagen Beetle with a convertible top.

a hillside near a private road. From photographs taken at the scene, it was apparent the vehicle skidded off the road and smashed into a tree located on a private property. Deputy Rabe asked Bruckner why he was speeding; Bruckner replied he "didn't want to stop for the speeding ticket." Bruckner was arrested and taken into custody for eluding.

After providing the previous description of events at the jury trial, during cross-examination, Deputy Rabe confirmed he could not clearly see the vehicle after it turned onto the gravel road. Because he could not see Bruckner's vehicle on the gravel road ahead of him due to the dust trail, Deputy Rabe admitted it was possible Bruckner may not have been able to see his marked patrol car pursuing him on that gravel road.

At trial, Bruckner did not testify but did call one witness. Bruckner's passenger, Taylor Wiersema, a family friend, testified for the defense. Wiersema would sometimes hire Bruckner to take her places in his vehicle. Such was the case on the day of the incident. Bruckner was taking Wiersema to Clinton so she could sell baby clothes. Wiersema denied ever seeing a Clinton County squad car as she rode with Bruckner heading eastbound on Highway 30 toward Clinton. She testified she was not surprised when Bruckner turned onto the gravel road because it was "[Bruckner's] typical route." As the passenger, Wiersema claimed she was not monitoring Bruckner's speed. At no time did Wiersema admit seeing the squad car, seeing any emergency lights, or hearing any sirens. She established that Bruckner's convertible had the top down and they were "blasting" loud music. When asked how the crash occurred, Wiersema said, "I just know that [Bruckner] said that there's a cat, so he swerved and missed the cat."

Following testimony from the State's witnesses, Bruckner moved for a judgment of acquittal on both the driving-while-barred and eluding charges. The court denied the motions. After deliberations, the jury returned a verdict finding Bruckner not guilty of count I, driving while barred, but guilty of a lesser included eluding offense in count II under Iowa Code section 321.279(1). The court sentenced Bruckner to ninety days in jail with sixty days suspended, imposed a fine of $315, and placed him on probation for a period of one year.

**Sufficiency of Evidence Claim.**

To begin, Bruckner challenges his conviction, claiming the jury lacked sufficient evidence to find he willfully eluded police. At the close of the State's case, Bruckner moved for a judgment of acquittal, alleging the State "has failed to prove their case with respect to driving while barred and eluding." Bruckner did not target any specific grounds in the motion.

"To preserve error on a claim of insufficient evidence for appellate review in a criminal case, the defendant must make a motion for judgment of acquittal at trial that identifies the specific grounds raised on appeal." *State v. Truesdell*, 679 N.W.2d 611, 615 (Iowa 2004) (citation omitted). "Error is not preserved on a sufficiency of the evidence claim where counsel has failed to make a motion for judgment of acquittal specifying the elements of the charge being challenged." *State v. Vansickle*, No. 14-1991, 2016 WL 531066, at *1 (Iowa Ct. App. Feb. 10, 2016) (citation omitted) (holding that a broad motion asserting failure to meet the prima facie case for any of the offenses failed to preserve error on the insufficient evidence claim that the defendant was not the driver). The State argues that Bruckner's motion for judgment of acquittal did not specify what element of the

eluding charge he was challenging, and, as a result, error was not preserved on his sufficiency of the evidence challenge.

Bruckner claims error was preserved relying on an exception to our normal error preservation rules "when the record indicates the grounds for the motion were obvious and understood by the trial court and counsel." *State v. Williams*, 695 N.W.2d 24, 27 (2005). We agree with the State that Bruckner did not specifically challenge the "willful" element of eluding in his motion for judgment of acquittal. And while we cannot say it was "obvious" and "understood" by the court that Bruckner was challenging the willful element of eluding in his motion, his case was built around the theory that Bruckner had no idea the deputy was in pursuit. So giving Bruckner the benefit of the doubt, we conclude error was preserved. Still, his sufficiency of the evidence claim fails on the merits.

When presented with a motion for acquittal, the standard is to view the evidence in the light most favorable to the State drawing "all fair and reasonable inferences from it and taking all the evidence into consideration, both direct and circumstantial." *See State v. Schlitter*, 881 N.W.2d 380, 389 (Iowa 2016) (citation omitted). The evidence must be sufficient to convince a rational fact finder that the defendant is guilty beyond a reasonable doubt. *State v. Shanahan*, 712 N.W.2d 121, 134 (Iowa 2006). With those concepts in mind, a jury could find sufficient evidence to convict Bruckner of eluding under section 321.279(1). First, a jury could believe Deputy Rabe's testimony that Bruckner admitted he knew the Deputy Rabe was in pursuit and fled to avoid a speeding ticket. Next, Bruckner's actions in substantially increasing his speed after the pursuit began and his sudden turn onto a gravel road support a finding he intended to elude. Finally, his route on the

gravel road, which did not track the stated trip purpose, also could provide evidence of an attempt to elude the authorities. Although the passenger said she did not see or hear the deputy, there was no testimony about whether Bruckner heard or saw the vehicle. Likewise, she was a family friend, and the jury was free to discount her credibility. *See State v. Wilson*, 878 N.W.2d 203, 217, n.7 (Iowa 2016) ("When a defendant offers an alternate explanation for his or her evasive conduct, it is up to the jury to decide whether to credit it.")

We find there was substantial evidence to support the conviction of eluding under 321.279(1).

**Sentencing Error.**

On this final issue, there is some agreement. Both parties agree the sentencing order incorrectly stated Bruckner was convicted of aggravated-misdemeanor eluding under Iowa Code section 321.279(2) rather than serious-misdemeanor eluding under Iowa Code section 321.279(1). This mistake appears to have been a clerical error as the court only referenced the charge at sentencing as a serious misdemeanor. "An error is clerical in nature if it is not the product of judicial reasoning and determination." *State v. Hess*, 533 N.W.2d 525, 527 (Iowa 1995) (citation omitted). If a clerical error leads to an incorrect sentencing order, we review the matter for correction of errors at law. *Id.*

Bruckner concedes that despite the error in the sentencing order, his sentence was based on the correct serious-misdemeanor charge. As Bruckner stated in his brief: "It does appear the court intended to impose the correct judgment, because the fine . . . aligns with a serious misdemeanor conviction." Yet he urges "the level of conviction should be corrected" by reversing his sentence

and remanding for sentencing.  Contrary to that plan, the State proposes we simply direct the trial court to enter a nunc pro tunc order correcting the Iowa Code section cited in the sentencing order.

The State's proposal is the correct route and fosters judicial economy. "When the record unambiguously reflects that a clerical error has occurred, we will direct the district court to enter a nunc pro tunc order to the correct the judgment entry." *Id.*  Thus, we affirm Bruckner's sentence and conviction for serious misdemeanor eluding and direct the district court to enter a nunc pro tunc order to correct the sentencing order to reflect the correct statute for serious-misdemeanor eluding on remand.

**AFFIRMED AND REMANDED FOR ENTRY OF NUNC PRO TUNC ORDER.**