# IN THE COURT OF APPEALS OF IOWA

No. 23-1870
Filed October 16, 2024

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**PHILLIP DEVIN ROBERTS,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Pottawattamie County, Craig M. Dreismeier, Judge.

A defendant appeals a district court determination that he is reasonably able to pay category "B" restitution. **AFFIRMED.**

Krisanne C. Weimer of Weimer Law, PC, Council Bluffs, for appellant.

Brenna Bird, Attorney General, and Olivia D. Brooks, Assistant Attorney General, for appellee.

Considered by Greer, P.J., and Ahlers and Badding, JJ.

**BADDING, Judge.**

Phillip Roberts appeals the district court's determination that he is reasonably able to pay category "B" restitution to the extent of his liquid assets in the amount of $18,800. He argues the court's failure to consider his other financial obligations and the circumstances he might face upon release from prison was an abuse of discretion. The State requests a remand for entry of a nunc pro tunc order to correct the judgment entry to make it consistent with the oral pronouncement of sentence. We affirm, finding no abuse of the court's discretion or need for entry of a nunc pro tunc order.

## I.      Background Facts and Proceedings

After more than two years of continuances, Phillip Roberts pled guilty to amended charges of lascivious acts with a child and indecent contact with a child. In his written guilty plea, Roberts acknowledged that he "may be assessed restitution with regard to [his] legal defense, crime victim assistance reimbursement, court costs, contribution to a local anticrime organization, or restitution to the medical assistance program," all of which are types of category "B" restitution. *See* Iowa Code § 910.1(2) (2023). However, Roberts stated in his written plea that "I do not agree that I am reasonably able to pay these amounts" and requested "that this issue be set for hearing."

Along with his written guilty plea, Roberts filed a request for a determination on his reasonable ability to pay category "B" restitution and the required supporting affidavit. *See id.* § 910.2A(2)(b), (d). The affidavit stated that while Roberts still owed $8000 in financial obligations in a separate criminal matter, he had no other outstanding debts. Because Roberts was in jail when the affidavit was filed, he

had no monthly expenses and was unemployed, although he had two years of college education. As for his assets, the affidavit stated that Roberts had $18,000 in cash and a vehicle valued at $1000. Roberts had no dependents and did not list any personal or family circumstances that would affect his ability to pay restitution.

Roberts's plea, sentencing, and reasonable ability to pay category "B" restitution were considered at a combined hearing in October 2023. The court sentenced Roberts according to the plea agreement—consecutive terms of imprisonment not to exceed ten and two years, suspended fines, a civil penalty of $260, surcharges totaling $180, and victim pecuniary damages totaling $2228.

On Roberts's reasonable ability to pay category "B" restitution, defense counsel asked the court to allow Roberts to keep all or a majority of the roughly $18,000 he had in cash. Before arguing that point, counsel asked Roberts for the exact amount in his possession. Roberts said it was "something like $18,800" that he earned from working while on pretrial release for almost two years. Before his pretrial release was revoked the month before his guilty plea, Roberts had been promoted to a supervisory position at a recycling plant where he was earning $18.50 per hour with overtime every week. When asked what he would like the court to do, Roberts explained:

> Well, if I had my way, I would say I'd like to keep it all. Obviously, that's not a likely assumption. So, in all fairness. I would like to keep . . . at least maybe 25 percent, at least. . . . So I can have something when I get to prison, something to get started. By the time I get out, I won't have anything. I'll be approaching the streets with rock bottom and starting from zero again, which I understand is something that . . . I will have to deal with; but I would rather, all honesty, at least let me keep a portion of my earnings. I worked a lot of hours these last couple years with the hopeful

intention of getting out of the street and using it to start a new life, get myself situated. Obviously, now things have changed and I'm going to prison. So I would at least like to keep a small percentage of it so I at least have something to start when I get there.

The court then surveyed the amounts of category "B" restitution before it, which totaled $2158.19,[1] not including current defense counsel's court-appointed attorney fees. Counsel estimated his total fees would be between $18,000 and $20,000. The State argued that Roberts's assets should go toward paying category "B" restitution, noting that Roberts's ability to save the money he did while on pretrial release shows that he's able-bodied and capable of earning money upon his release. The court sided with the State, advising Roberts that "the funds that have been received by you are monies that can be used to reimburse category B restitution costs that have been incurred in regards to this case" and concluding he has "the reasonable ability to pay category B restitution to the extent of the $18,800 that is presently within [his] possession."

After the court announced its decision, defense counsel asked the court to consider "an alternative approach" that would take "all of the [category] A restitution, subtract it from the $18,800, and then the rest of that is capped towards the B restitution amounts." The court rejected that request, reasoning that Roberts wouldn't be in custody for long given his credit for time already served, he is college educated with skills that would allow "him to go out and earn a good income," and

---

[1] The court at first tallied a total of $2174.19, comprised of $16 to the sheriff, court costs of $672.29, and court-appointed attorney fees and expenses for prior counsel of $1485.90. But the court later agreed with defense counsel that the $16 to the sheriff did not constitute an amount owed for restitution.

he will be "capable of working." So, in the end, the court determined Roberts had the reasonable ability to pay up to $18,800 in category "B" restitution.

Roberts appeals.

## II. Analysis

"We review the district court's determination of the amount [Roberts] is reasonably able to pay towards [category 'B'] restitution for an abuse of discretion." *State v. Hawk*, 952 N.W.2d 314, 320 (Iowa 2020); *see also State v. Estabrook*, No. 22-1713, 2023 WL 5949190, at *2 (Iowa Ct. App. Sept. 13, 2023) ("The district court has broad discretion in making its determination."). But first, a brief review of Iowa Code chapter 910.

That chapter requires an offender to pay restitution for pecuniary damages to the victim and category "A" restitution—comprised of fines, penalties, and surcharges—regardless of the offender's reasonable ability to pay. *See* Iowa Code § 910.2(1)(a)(1) ("Pecuniary damages and category 'A' restitution shall be ordered without regard to an offender's reasonable ability to make payments."); *see also id.* § 910.1(1) (defining category "A" restitution to include "fines, penalties, and surcharges"). Category "B" restitution, however, is subject to an offender's reasonable ability to pay. *Id.* § 910.2(1)(a)(2). Iowa Code section 910.2A controls how an offender's reasonable ability to pay category "B" restitution is determined.

Under that section, we start with a presumption that the offender has "the reasonable ability to make restitution payments for the full amount of category 'B' restitution." *Id.* § 910.2A(1). To overcome that presumption, "the offender must affirmatively prove by a preponderance of the evidence that the offender" lacks the reasonable ability to "make payment toward the full amount." *Id.* § 910.2A(2)(a).

In doing so, the offender must file the required financial affidavit and submit to questioning at the hearing on his or her reasonable ability to pay. *Id.* § 910.2A(2)(b), (c). "Based on the evidence offered at the hearing, including but not limited to the financial affidavit, the court shall determine the amount of category 'B' restitution the offender is reasonably able to make payments toward, and order the offender to make payments toward that amount." *Id.* § 910.2A(2)(d). "A court that makes a determination under this section is presumed to have properly exercised its discretion. A court is not required to state its reasons for making a determination." *Id.* § 910.2A(5).

On appeal, Roberts points out that, while he had $18,800 in liquid assets, he owed unpaid obligations of $8000 in a prior case, plus the $2668 he owed in this case from the combined total of the civil penalty, surcharges, and pecuniary damages that must be paid regardless of his reasonable ability to pay. And while Roberts agrees "the term of incarceration being imposed was unlikely to result in a significant amount of further custody," he submits the court failed to consider that he would be unable to meet his basic needs upon release without any funds or a job. Roberts argues the court's failure to take into account his other financial obligations and circumstances upon release when determining his reasonable ability to pay category "B" restitution was an abuse of discretion.

Trouble is, the district court clearly considered Roberts's other financial obligations and the circumstances he would face upon release from prison. Defense counsel specifically asked the court to cap Roberts's reasonable ability to pay at an amount equal to his liquid assets less his other financial obligations. And, as quoted above, Roberts detailed for the court what he expected his

circumstances to look like when released from prison. Despite these considerations, the court still reasoned that Roberts had a reasonable ability to pay category "B" restitution up to the amount of his cash assets, observing he wouldn't be in prison for very long and had some college education with skills that would allow him to earn a good income upon his release, just as he did in the past. *See Estabrook*, 2023 WL 5949190, at *2 (finding no abuse of discretion in reasonable-ability-to-pay determination given offender's "skills as a machinist, and his lengthy history of gainful employment"). With no other outstanding debts, dependents, or monthly expenses to worry about, the court's determination that Roberts could land on his feet after his release from prison is not unreasonable or untenable.

We also observe that Roberts's argument assumes he was being stripped of all his liquid assets immediately. Not true. The plan of payment for restitution in the written sentencing order called for monthly payments of $50, with the full balance due in two years. While the plan of payment is subject to modification, *see* Iowa Code § 910.5(1)(d), Roberts's claim that he will have nothing when he is released from jail is speculation. *See, e.g.*, *State v. Henderson*, 268 N.W.2d 173, 180 (Iowa 1978) ("[W]e will not reverse on speculation."). Giving deference to the court's broad discretion, we conclude that Roberts did not rebut the statutory presumption of his reasonable ability to pay.

This leaves us with the "wrinkle" noted by the State. The State reads the district court's oral pronouncement of sentence as capping restitution for both pecuniary damages and category "B" restitution at $18,800, while the written sentencing order capped only category "B" restitution at $18,800, meaning that pecuniary damages would be on top of that figure. The State requests a remand

for entry of a nunc pro tunc order to correct the discrepancy. *See State v. Hess*, 533 N.W.2d 525, 527–28 (Iowa 1995). But we don't find there is a discrepancy that needs correcting.

Before the court were victim pecuniary damages of $2228, category "A" restitution of $440, and then the category "B" restitution. The district court's initial oral pronouncement was as follows:

> So this court finds that you do have the reasonable ability to pay category B restitution to the extent of the $18,800 that is presently within your possession. The court will cap the amount at that amount understanding, though, that there won't even be that much for you to pay because $2,200 or so is going to be paid towards category A Restitution. Category B restitution is capped $18,800.

We agree with the State that the "$2,200 or so" the court referred to as category "A" restitution was the victim pecuniary damages. *See* Iowa Code § 910.1(1), (6) (separately defining category "A" restitution and pecuniary damages). But we part ways with the State's interpretation of this statement to mean that the court was capping the total of both restitution categories at $18,800, which would equal $2228 for pecuniary damages and then $16,572 for category "B" restitution. The court twice said in the above statement that category "B" restitution was being capped at $18,800. And, later in the hearing, the court rejected defense counsel's request to subtract Roberts's other restitution obligations from the $18,800 before capping the category "B" restitution, ruling: "I'm capping category B at $18,800 as indicated." The court's order of disposition was consistent with these oral pronouncements: "[D]efendant has the reasonable ability to pay the amount of $18,800 for category B restitution ordered in this paragraph and judgment is imposed against the defendant in that amount in

addition to pecuniary damages and category A restitution [previously] imposed."

We accordingly find that entry of a nunc pro tunc order is unnecessary.

**AFFIRMED.**